**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TODD COURSER
      Plaintiff

v.

KEITH ALLARD; et al,
        Case No. 1:16-cv-01108

     Defendants

        HON. GORDON J. QUIST

---

## ** ORAL ARGUMENT REQUESTED **

## PLAINTIFF'S BRIEF ADDRESSING WHETHER RULE 15(a)(1) AMENDMENT AS OF RIGHT WAS EFFECTIVE TO DROP DEFENDANT KRELL

---

# TABLE OF CONTENTS

Page

A.   Claim against Vincent Krell................................................................................1

B.   Procedural Background.....................................................................................6

C.   Vincent Krell's affidavit...................................................................................9

D.   An Amendment as of right pursuant to Rule 15(a)(1) is a proper means of dropping a party, i.e. without an order.............................................................11

E.   Having answered (D) in the affirmative, an amendment as of right pursuant Rule 15(a)(1) is effective as against a party who has previously filed a motion for summary judgment....................................................................................13

    1.   The inquiry into the motion for summary judgment is moot................................13

    2.   Vincent Krell never filed a "responsive pleading"................................................16

F.   These issues are also moot because the District Court failed to ask Mr. Courser whether he wanted to withdraw his notice of voluntary dismissal. ..................16

G.   What Next? ......................................................................................................19

i

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**                                                                                                   Page

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................14, 15

*Bell v. Union Carbide Corp.*, 385 F.3d 713 (6th Cir. 2004) .........................................................14

*Broyles v. Corr. Med. Servs., Inc.*, No. 08-1638, 2009 WL 3154241 (6th Cir. 2009)..................12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................................14, 15

*CenTra, Inc. v. Estrin*, 538 F.3d 402 (6th Cir. 2008).....................................................................14

*Duffy v Ford Motor Company*, 218 F.3d 623 (6th Cir. 2000) .......................................................16

*Gerald Peguese v PNC Bank, N.A. et al*, 306 F.R.D 540 (E.D. Mich. 2015).........................11, 12

*In re Alfes*, 709 F.3d 631 (6th Cir. 2013)......................................................................................13

*Marlow v Winstron & Strawn*, 19 F.3d 300 (7th Cir. 1994).........................................................16

*McClennan v Mississippi Power & Light Co.*, 526 F.2d 870 (5th Cir. 1976) ...............................13

*Michigan Surgery Investment, LLC v. Arman*, 627 F.3d 572 (6th Cir. 2010) .............16, 17, 18, 19

*Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir. 2000) .................................................13

*United States v. One Tract of Real Property*, 95 F.3d 422, (6th Cir. 1996) ...........................17, 18

*Wolfson v. Lewis*, 168 F.R.D. 530 (E.D. Pa. 1996)......................................................................11

**<u>Michigan Cases</u>**

NONE

**<u>Statutes</u>**

NONE

**<u>Federal Rules of Civil Procedure</u>**

FRCP 7...........................................................................................................................................16

FRCP 12........................................................................................................7, 8, 11, 13, 14, 16

FRCP 15...................................................................................................7, 9, 11, 12, 13, 14, 19

FRCP 21........................................................................................................................................12,

ii

FRCP 41............................................................................................................15, 16, 17, 18, 19

FRCP 56..................................................................................................................7, 14, 15

**Federal Rules of Appellate Procedure**

NONE

**Other Authorities**

1 Steven S. Gensler, *Federal Rules of Civil Procedure,*
    *Rules and Commentary*, Rule 21 (2015)...........................................................................12

L. Charles Alan Wright, Arthur R. Miller, Mary Kay Kane,
    Federal Practice and Procedure: Civil 2d § 1474 (1990)...................................................12

DePerno Law Office, PLLC ● 951 W. Milham Avenue ● PO Box 1595 ● Portage, MI 49081
(269) 321-5064 (phone) ● (269) 353-2726 (Fax)

A.      <u>Claim against Vincent Krell</u>

Plaintiff, Todd Courser, was the duly elected Representative for the 82nd District and a member of the Michigan House of Representatives (the "House"), until he was unlawfully forced to resign his position on September 11, 2015. There are facts that Mr. Courser now knows that he did not know when the complaint was initially filed on September 8, 2016. The following is a brief list of some facts:

> ➢ Two days before Plaintiff was sworn into office, a computer administration with the House added recording or surveillance software to Mr. Courser's computer that would be assigned to him. Then, someone added an "Android emulator" to Mr. Courser's computer, which allowed someone with an Android cell phone to remotely operate the computer.

> ➢ Ben Graham was surreptitiously recording conversations of Mr. Courser. Ben Graham was directed by Keith Allard to record conversations. Keith Allard was Mr. Courser's chief of staff.

> ➢ Ben Graham and Keith Allard followed and conducted surveillance on Mr. Courser. Ben Graham and Keith Allard discovered that Mr. Courser was having an affair with Cindy Gamrat, the Representative for the 80th District and a member of the House.

> ➢ In early May of 2015 Mr. Courser and Ms. Gamrat and selected members of their families and friends began to receive disturbingly intimate extortion texts demanding that Mr. Courser and Ms. Gamrat resign. Between May and August of 2015 over 100 such texts were received. The texts displayed an intimate

knowledge of their lives; their phone records, their communications, their travel, their pasts, and their family relationships.

➤ Defendant Vincent Krell was a friend of Defendant Joe Gamrat (Cindy Gamrat's then husband). Vincent Krell coordinated with Joe Gamrat and Defendant David Horr to gather information on Mr. Courser and Cindy Gamrat. This included setting up surveillance, following Mr. Courser, taking pictures, and recording conversations. This information was then passed along to Ben Graham and Keith Allard. Joe Gamrat and Vincent Krell also worked together to conduct wiretapping of Cindy Gamrat by secretly placing recording devices in her office, her purse, her car, her home, her bedroom, and her campaign headquarters. Joe Gamrat and Vincent Krell were also secretly monitoring phone calls, downloading emails both inbound and outbound, and voicemails between herself and anyone else.

➤ Deleted texts taken from Vincent Krell and Joe Gamrat's phone by the Michigan State Police reveal the following texts in connection with surveillance at the Radisson hotel:

- "I just think it's strange that both beds are used. I typically sleep in one and put my suitcase or bag on the other. You? Heat was high too which is just the way Cindy likes it."

- "Housekeeping usually makes both beds when they clean each day so both beds used yesterday?"

- "FYI She checked in at 1:29a and he checked in at 7:51a Tuesday morning."

- "Hotel room is considered private."

- "Hotel has now told me that his reservation is for Tuesday and Wednesday, not Monday and Tuesday. S"

2

DePerno Law Office, PLLC ● 951 W. Milham Ave. ● PO Box 1595 ● Portage, MI 49081
(269) 321-5064 (phone) ● (269) 321-5164 (Fax)

- "By the way, he obviously didn't take a shower this am as the shower curtain was 'out' of the tub? Must have had a bath last night?"

➢ As part of the surveillance conducted against Mr. Courser, Ben Graham recorded a meeting with Mr. Courser in an office where Mr. Courser operated his law practice and Mr. Graham operated his political consulting business called Bellweather Strategies. As part of the extortion efforts, someone threated Mr. Courser that he would release the recording to media if Mr. Courser did not resign. When Mr. Courser refused, Ben Graham released the recording to Defendants The Detroit News and Chad Livengood.

➢ Chad Livengood published its story on August 7, 2015. That evening, Speaker of the House Kevin Cotter and his chief counsel Brock Swartlze placed a "litigation hold" on all electronics devices and seized Mr. Courser and Ms. Gamrat's computers. Mr. Cotter then directed the Michigan State Police to travel to Lapeer, Michigan and seize additional computers from Mr. Courser's home and law office. Mr. Cotter did so even though he has no authority to direct the MSP to seize anyone's property and even though he had no warrant. The MSP complied, even though there was no warrant.

➢ This "litigation hold" consisted of "(1) preserving all House Network drives, emails, calendars, and other Outlook-related matter; (2) seizing all hardcopy documents form the offices of Rep. Courser and Rep. Gamrat; and (3) instructing Republican and Democrat senior staff to review all of their filed for any records potentially relevant to the investigation." Exhibit A.

➢ In the HBO report, Brock Swartzle and Tim Bowlin confirmed that on August 7, 2015 they "put on hold all electronic data of the House/Members/Staff".

3

➢ Mr. Courser filed a complaint with the MSP regarding the illegal surveillance and extortion. The MSP started an investigation.

➢ The House then began its own investigation into Mr. Courser and Ms. Gamrat's "fitness to serve as representatives" and demanded a criminal investigation into Mr. Courser and Ms. Gamrat. On August 17, 2015, Defendant Tim Bowlin (who managed the House Business Office, a partisan office that works for the Speaker of the House) and the MSP interviewed Mr. Courser.

➢ After the computers and electronics were seized by the House and during the pending criminal investigation, someone with access to the computers and using an administrator's login and password, started accessing the computers, deleting items, and then "bleaching" the computers; presumably to remove any trace of the surveillance and illegal conduct. This included removal of the recording software and Android emulator.[1]

➢ Even though there was an active criminal investigation ongoing involving these computers, the MSP allowed the House (a government agency and the complaining witness in a criminal investigation against Mr. Courser and Ms. Gamrat) to conduct its own simultaneous investigation and hang onto the key pieces of evidence until the House decided it was time to turn those computers and other data over to the MSP.

➢ These computers were turned over to the MSP in September 1, 2015. The officer who collected these computers from the House then waited until September 11,

---

[1] The "bleaching" software used was a program called Kaspersky, which has since been banned in the United States because of its destructive properties. ". It is a program used to search and delete files and then shred and write over the files on the computer, commonly referred to as "bleaching" the computer. It operates like a program called "BleachBit", which gained notoriety as the program used by Hillary Clinton to "wipe" her computers.

4

2015 to turn the computers over to the forensic crime unit in Dimondale, Michigan.

➢ Police records claim that forensic images were made of these computers on September 14, 2015 and October 8, 2015. However, during September 14, 2015 and October 8, 2015, more information was deleted from these two computers and they were "bleached" again while in possession of the MSP.

➢ Larry Dalman has signed an affidavit stating that information is missing from the forensic images, including 37,472 bookmarked items, 7 forensic report, audio files, and a 32 GB thumb drive containing audio file. Exhibit B.

➢ Adam Kelly of DataExam LLC also conducted an initial review of the forensic images. Mr. Kelly signed an affidavit. Exhibit C. Mr. Kelly confirmed that the MSP did not follow proper protocol when receiving the data. Rather than first conducting a forensic image, the MSP first conducted an examination of the data which resulted in destruction of evidence and integrity of the data. Mr. Kelly's reports also show that items were accessed and deleted while in the possession of the House and MSP after the "litigation hold" was in place.

➢ Exhibit D is a report printed by Spectrum Computer Forensic & Risk Management, LLC. This report shows the following:

- On September 18, 2015 (while in the possession of the MSP) the surface pro laptop assigned to Todd Courser was accessed and 100 files (3,348,815 bytes) were added to the computer

- On September 23, 2015 (while in the possession of the MSP) the surface pro laptop assigned to Todd Courser was accessed and 39 files (6,481,977 bytes) were added to the computer.

- On September 24, 2015 (while in the possession of the MSP) the surface pro laptop assigned to Todd Courser was accessed and 26 files (8,968,623 bytes) were added to the computer.

5

➢    This information reveals that someone at the House and MSP accessed these computers and deleted files, overwrote files, and "bleached" these computers.

## B.    <u>Procedural Background</u>

The following procedural history is important for purposes of this motion so the Court can properly understand the process the led up to the First Amended Complaint and Notice of Voluntary Dismissal.

- 09/08/2016:    Mr. Courser filed his complaint against multiple defendants [ECF No. 1, PageID.1].

- 09/16/2016:    Defendant William Schuette, the Michigan Attorney General, was served. His answer was due October 7, 2016 [ECF No. 6, PageID.238].

- 09/26/2016:    Requests for Waiver of Service were served on multiple defendants [ECF Nos. 7-21], making responses due roughly around November 21, 2016. Other defendants were served by personal service or certified mail, making their response due roughly around October 17, 2016 [ECF Nos. 29-36].

- 10/06/2016:    Defendant William Schuette filed a motion for extension of time to respond [ECF No. 22, PageID.255]. He requested a 6-week extension to November 21, 2016, which was roughly the due date for other defendants to respond. *Id.*

- 10/06/2016:    Mr. Courser opposed the motion for extension [ECF No. 24, PageID.270].

- 10/07/2016:    The District Court granted the motion for extension [ECF No. 28, PageID.357] the day after the motion was filed. This was a 45 day extension.

- 10/12/2016:    Based on the District Court's reasoning to grant the extension for defendant Schuette, it made little sense to oppose any further extension request. Mr. Courser stipulated to an extension for Allard and Graham [ECF No. 37, PageID.395].

- 10/12/2016:    Mr. Courser also stipulated to an extension request for Joe Gamrat [ECF No. 38, PageID.397]. This was a 38 day extension.

6

- 10/12/2016:      Mr. Courser also granted defendant Cline a 63 day extension through December 5, 2016.

- 10/13/2016:      Mr. Courser also stipulated to an extension request for Chad Livengood and the Detroit News [ECF No. 54, PageID.422]. This was a 38 day extension.

- 10/14/2016:      Mr. Courser also stipulated to an extension request for Vincent Krell [ECF No. 56, PageID.426]. This was a 35 day extension.

- 10/20/2016:      Mr. Courser stipulated to a second extension request for Allard and Graham [ECF No. 58, PageID.430]. This totaled 35 days of extension.

- 11/16/2016:      Defendant Radisson Hotels and Radisson Group filed an answer [ECF No. 71, PageID.570].

- 11/18/2016:      Defendant Joe Gamrat filed an answer [ECF No. 72, PageID.984].

- 11/18/2016:      Defendants Livengood and Detroit News filed a Rule 12(b)(6) motion to dismiss [ECF No. 73, PageID.1252].

- 11/21/2016:      Defendant David Horr filed an answer [ECF No. 79, PageID.1318].

- 11/21/2016:      Defendants Michigan State Police, Brewer, Britvec, Dwyre, and Schuette filed a Rule 12(b)(6) motion to dismiss [ECF No. 80, PageID.1325].

- 11/21/2016:      Vincent Krell filed a Rule 12(b)(6) motion to dismiss, or in the alternative, Rule 56 motion for summary judgment [ECF No. 83, PageID.1412].

- 11/23/2016:      Defendant Saari filed a Rule 12(b)(6) motion to dismiss [ECF No. 97, PageID.2904].

- 11/23/2016:      Defendants Michigan House, Cotter, Bowlin, Swartzle, McBroom, LaFontaine, Verheulen, Beydoun, and Heise filed a Rule 12(b)(6) motion to dismiss [ECF No. 100, PageID.2950].

- 12/05/2016:      Mr. Courser was permitted to amend his complaint once as a matter of right within 21 days after service of a responsive pleading, making the amended complaint due on December 12, 2016 (including the 3 day rule). Rule 15(a)(1).

Mr. Courser sought the cooperation and concurrence of all defendants in an extension to file an amended complaint. Only Defendants Gamrat and Cline did not object. All other defendants either objected to the request for extension or concurrence, including Defendant Krell, or they ignored the request.

On December 5, 2016, Mr. Courser filed a motion for extension to file an amended complaint. (ECF No. 111, PageID.4382). Plaintiff also requested immediate consideration because Mr. Courser's amended complaint was due on December 12, 2016. *Id.*

Consistent with the multiple other extensions granted by Mr. Courser's attorney and the District Court (including an extension granted to Vincent Krell), Mr. Courser expected an extension.

- 12/09/2016: On Friday, December 9, 2016 at 3:30 P.M., the District Court denied the motion for extension. [ECF No. 119, PageID.4421].

- 12/12/2016: Although Mr. Courser's attorney had been working on an amended complaint, it wasn't entirely complete, but it was filed regardless [ECF No. 121, PageID.4423]. By way of that amended complaint, Courser removed certain defendants from the lawsuit, including Vincent Krell. See ECF No. 121, PageID.4425, fn*.

- 12/12/2016: Mr. Courser then filed a notice of voluntary dismissal as to the remaining defendants, all of which had filed Rule 12(b)(6) motions [ECF No. 123, PageID.4545]. This ended the litigation, without prejudice.

- 12/15/2016: Even though the case was concluded on December 12, 2016, pursuant to the amended complaint and notice of voluntary dismissal, certain defendants (the House, Cotter, Bowlin, Swartzle, McBroom, LaFontaine, VerHeulen, Beydoun, and Heise) filed a "response" to the notice of voluntary dismissal [ECF No. 125, PageID.4549].

- 12/16/2016: Even though the case was concluded on December 12, 2016, pursuant to the amended complaint and notice of voluntary dismissal, Vincent Krell also filed a "response" to the notice of voluntary dismissal [ECF No. 126].

- 12/19/2016: Even though the case was concluded on December 12, 2016, pursuant to the amended complaint and notice of voluntary

8

dismissal, the District Court issued an order on December 19, 2016 stating that Vincent Krell was dismissed with prejudice [ECF No. 127, PageID.4586].

- 01/18/2017:     Mr. Courser filed his appeal. [ECF No. 137, PageID.4874]. Mr. Courser has argued that the District Court erred when it dismissed Vincent Krell "with prejudice".

- 12/19/2017:     The Court of Appeals for the Sixth Circuit issued an Order asking the District Court to clarify its Order as to why this Court failed to acknowledge that the amended complaint did not include Defendant Krell.

- 01/05/2018:     The District Court issued an "Order Following Limited Remand" wherein the District Court answered that "the Court simply failed to consider that the amended complaint dropped Defendant Krell." [ECF No. 142, PageID.4894]. Then the District Court asked the parties to file briefs by January 19, 2018 "addressing whether Plaintiff's Rule 15(a)(1) amendment as of right was effect to drop Defendant Krell." *Id.*

## C.    <u>Vincent Krell's affidavit</u>

On November 21, 2016, filed Krell filed an affidavit with this Court (ECF No. 84-1, PageID.1447). In his affidavit, Mr. Krell broadly claims that he "did not engage in any of the conduct alleged in the Complaint." Based on the information known to Plaintiff and his attorneys, this statement is demonstrably false. We only need to look at the messages between Joe Gamrat and Vincent Krell:

- "I guess that stuff came from Keith";

- "I just think it's strange that both beds are used. I typically sleep in one and put my suitcase or bag on the other. You? Heat was high too which is just the way Cindy likes it."

- "What the F@$& her room?" Vincent Krell said.

- "His," Joe Gamrat said.

- "Unfortunately, all it makes me want to do is exactly the thing that really made her hate me – spy, records, etc."

9

- "I found it in her truck. It's running on a regular battery now, not the extended version. Not sure where the extended battery is though. Oh well, cam is set once again. Should be an infesting night."

- "No movement last night. I'm at UM with Meghan. It is following her today. :)"

- "Haven't checked anything else yet but 5:47-5:55 changed and respositioned. Now at 201%. Hope I get something good."

- "That vid was at 12:15a."

- "I'll show you one of these days. We could be Krell Gamrat Bureau of Investigation or KGB," Joe Gamrat said.

- "Private Investigators. We could make a killing. No pun intended," Vincent Krell said.

- "I'm sure if (when) the media got a snippet, they'd be all over it," Vincent Krell said.

- "His clothes are still there," Vincent Krell said on February 12, 2015.

- "Yeah someone was in both of those beds," Vincent Krell said on February 12, 2015.

- "By the way, he obviously didn't take a shower this am as the shower curtain was out of the tub? Must have had a bath last night."

- "They're at a Tim Hortons in Oxford, MI now."

These texts attached as <u>Exhibit E</u>. These texts messages between Joe Gamrat and Vincent Krell admit to surveillance. They acknowledge that they were spying at the Radisson. How would Joe Gamrat and Vincent Krell know that both beds were slept in or how high the heat was? How would they know that the curtain was out of the shower. Vincent Krell admits to being part of the "Krell Gamrat Bureau of Investigation". Vincent Krell claims that Mr. Courser's clothes are still in his room and that someone was in both beds. All of these statements contradict his affidavit that he wasn't involved and that he was not in Michigan on February 12, 2015. Simply put, Vincent Krell could not know that Mr. Courser's clothes are still in his room and that someone was in both beds unless he was in Michigan on February 12, 2015.

10

**D.** **An Amendment as of right pursuant to Rule 15(a)(1) is a proper means of dropping a party, i.e. without an order.**

Rule 15 permits a party to amend a pleading "as a matter of course" (A) either 21 days after serving the pleading or (B) if the pleading requires a responsive pleading, 21 days after receipt of the responsive pleading or a motion under Rule 12(b). FRCP 15(a)(1). In this case, the initial complaint [ECF No. 1] required a responsive pleading. Therefore, Plaintiff was permitted "as a matter of course" to amend the complaint within 21 days of serving the complaint or 21 days after receiving any responsive pleading or Rule 12(b) motion.

The first responsive pleading was filed November 16, 2016, making the amendment as of right due on December 12, 2016 (including the 3 day rule). This provision, allowing a plaintiff a short time to amend without leave after receiving a defendant's answer or pre-answer motion makes sense because it allows a plaintiff to try to cure any defects alleged in the answer or pre-answer motion. The Plaintiff can add more claims, or add some claims and drop some claims, or add parties or drop parties, change some factual allegations, or file a completely revised complaint. That is Plaintiff's right. The rule simply states that the party is permitted to "amend". A motion is not required; the very point of the amendment "as a matter of course" is that a plaintiff has a *right to do it*. The party does not have to ask anyone.

This issue was detailed in *Gerald Peguese v PNC Bank, N.A. et al*, 306 F.R.D 540 (E.D. Mich. 2015). Exhibit F. In *Peguese*, after the plaintiff filed his complaint, the defendant bank filed a pair of motions to dismiss. Then the plaintiff filed an amended complaint adding a party within the 21 days after the motions were filed. *Id.* at 1.[2] The defendant bank argued that the

---

[2] Plaintiff acknowledges that *Peguese* involved "adding a party" whereas this case deals with "dropping a party." However, the issue is the same. See *Wolfson v. Lewis*, 168 F.R.D. 530, 533 (E.D. Pa. 1996) (Amendments under Rule 15(a) can be made "to cure a defective pleading, to correct insufficiently stated claims, to amplify a previously alleged claim, to change the nature or theory of a case, to state additional claims, to increase the amount of damages sought, to

amendment was not permitted because Rule 21 requires a party to file a motion to add or dismiss

a party. The Court in *Peguese* stated the following:

> The Sixth Circuit has not determined in a published decision "whether Rule 21 or Rule 15 controls the amendment of a pleading where the amendment seeks to add parties to the action." *Broyles v. Corr. Med. Servs., Inc.*, No. 08-1638, 2009 WL 3154241, at *3 (6th Cir. 2009). "The significance of this issue is that a court order is required for action under Rule 21 whereas an amendment made as of right occurs without the court's involvement." 1 Steven S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary*, Rule 21 (2015).
>
> In *Broyles*, the Sixth Circuit held that the district court abused its discretion by striking the plaintiff's amended complaint filed before the defendant submitted a responsive pleading, which added additional parties, rather than permitting amendment of his complaint without leave of the court. The court observed that Rule 15(a) gives plaintiffs an "absolute right" to amend a complaint before a responsive pleading is served even if the amendment would be futile. *Broyles*, 2009 WL 3154241, at *3-4.

*Id.* at 7. The Court framed the issue as: "The question remains, however, whether Rule 21's

motion requirement governs Rule 15(a)(1)'s liberal amendment policy when it comes to adding

parties. There is a potential conflict between Rule 15(a)(1) and Rule 21 because Rule 21 requires

a plaintiff to seek permission before adding or dropping a party. *Id.* at 9. The Court then

acknowledged that circuits "are split on whether Rule 21 has preference over Rule 15(a) . . .

although there is a clear trend favoring the predominance of Rule 15(a)(1)." *Id.* at 10. The Court

then agreed with the majority of court:

> This Court agrees with the majority of jurisdictions that Rule 15(a)(1) prevails over Rule 21 when a plaintiff amends his complaint as a matter of course within the time allowed and adds a party. Rule 15's command is clear: a plaintiff "*may* amend *its* pleading once as a matter of course." (Emphasis added.). The choice is the plaintiff's, not the Court's, and certainly not the defendant's. The more specific terms of Rule 15 addressing amendments govern over the more general provisions of Rule 21. That construction respects the reasoning of *Broyles v. Correctional Medical Services, Inc.*, and is more consistent with Sixth Circuit's precedent holding that Rule 15(a)(1) provides plaintiffs with "an absolute right to

elect difference remedies, or to add, substitute or drop parties to the action." (citing L. Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1474 (1990)).

amend their complaint one time before a responsive pleading is served." *In re Alfes*, 709 F.3d 631, 639 (6th Cir. 2013) (quoting *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 420 (6th Cir. 2000)).

*Id.* at 11. The Court then concluded that the amendment was filed properly. *Id.* The answer is clear. There is nothing in Rule 15 that prohibits a plaintiff from removing a party from the complaint. Courts have long recognized that a party can be dropped via Rule 15. See ex. *McClennan v Mississippi Power & Light Co.*, 526 F.2d 870, 872-73 (5th Cir. 1976). In fact, the Sixth Circuit's precedent hold that Rule 15(a)(1) provides plaintiffs with "an absolute rule to amend their complaint one time before a responsive pleading is served." *In re Alfes*, 709 F.3d 631, 639 (6th Cir. 2013) (quoting *Pertuso v Ford Motor Credit Co.*, 233 F.3d 417, 420 (6th Cir. 2000). The amended complaint in this case, therefore, was properly filed and defendant Krell was properly dismissed from the complaint pursuant to Rule 15.

**E.**     **Having answered (D) in the affirmative, an amendment as of right pursuant Rule 15(a)(1) is effective as against a party who has previously filed a motion for summary judgment.**

Defendant Krell never filed an answer to the complaint. Instead, Defendant Krell filed a motion styled "*Defendant Vincent Krell's Motion to Dismiss, or in the Alternative, for Summary Judgment*". (ECF No. 83, PageID.1412). The answer to the District Court's second inquiry is two-fold:

1.     The inquiry into the motion for summary judgment is moot.

First, the inquiry into whether Vincent Krell filed a motion for summary judgment is not relevant. The relevant inquiry is answered above. Rule 15(a) grants a party an absolute right to amend if filed within 21 days after a responsive pleading or within 21 days after a Rule 12(b) motion. Mr. Courser did that. The first responsive pleading was filed by the Radisson defendants. Mr. Courser filed his amended complaint within 21 days. Mr. Courser also filed his amended complaint within 21 days after all Rule 12(b) motions. Vincent Krell filed a motion that he called

13

a "motion to dismiss" under Rule 12(b), *or in the alternative*, a motion for summary judgment. Just naming it a "motion for summary judgment" doesn't make it so. Having concluded above that Mr. Courser is permitted to remove Vincent Krell from the lawsuit by filing the amended complaint with 21 days of the first responsive pleading, Vincent Krell's motion to dismiss or summary judgment was moot.

But for argument's sake, if Mr. Courser is not permitted to remove Mr. Krell by Rule 15(a), then Mr. Courser argues that Vincent Krell's motion was a Rule 12(b) motion and improperly characterized as a "motion for summary judgment" under Rule 56. In that event the case against Krell was dismissed pursuant to the notice of voluntary dismissal.[3]

It is Mr. Courser's position that a Rule 56 motion was not procedurally proper at the time it was filed. A summary judgment motion is to be considered only "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Summary judgment must "be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) ("full opportunity to conduct discovery" must precede summary judgment); *Bell v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) ("[The] plaintiff must receive a full opportunity to conduct discovery to be able to successfully defeat a motion for summary judgment."). "Typically, when the parties have no opportunity for discovery, . . . ruling on a summary judgment motion is likely to be an abuse of discretion." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008).

A motion for summary judgment should be granted only if the evidence submitted to the district court demonstrates that there is no genuine issue as to any material fact, and the movant

---

[3] Assuming the district court did not recognize that Krell was dismissed pursuant to the amended complaint.

is entitled to judgment as a matter of law. See Rule 56(c);  see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. The court's function is not to weigh the evidence and determine the truth of the matters asserted, "but to determine whether there is a genuine issue for trial." *Id.* at 249. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The text message and evidence of deleted items present a clear issue of fact. Here, the District Court stated the following:

> Defendant Krell filed a motion to dismiss, or in the alternative, for summary judgment. Defendant Krell supported his motion for summary judgment with an affidavit stating that he was not involved in any way in the conduct alleged in the complaint. (ECF No. 84-1.) Courser's notice of voluntary dismissal is thus not effective as to Defendant Krell. Instead, Courser's notice must be deemed a motion by Courser for dismissal of Defendant Krell under Rule 41(a)(2), which provides, in part, that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." In his response to Courser's notice of voluntary dismissal, Defendant Krell requests that, for terms the Court considers proper, the Court either require Courser and his counsel to pay Defendant Krell's attorney's fees or dismiss the action with prejudice as to Defendant Krell. Given that Defendant Krell has provided an affidavit stating that he was not involved at all in the events alleged in the complaint, the Court concludes that it is appropriate that the dismissal of Defendant Krell be with prejudice.

*Order*, ECF No. 127, PageID.4588. Notwithstanding that Courser did not file a Rule 41(a)(2) motion for dismissal, the District Dourt considered the affidavit as if it was truthful and had merit, effectively concluding that there is no genuine issue for trial. In fact, Courser disputes the entirety of the statements in the affidavit and has shown herein that there is an issue of fact.

In this case, Krell sought summary judgment on his version of the facts without Courser having the opportunity to conduct depositions or engage in discovery. The District Court cannot

15

know what the evidence will establish and it cannot accept Krell's affidavit as the truth at this stage in the proceeding; even before an initial discovery conference has been held. Allowing Krell to file a premature summary judgment motion was prejudicial to Mr. Courser. The District Court should have restricted Krell to a motion under Rule 12(b)(6).

2.     Vincent Krell never filed a "responsive pleading".

Second, if we strictly look at Vincent Krell filings, he never filed a "responsive pleading." Rule 7 defines a "pleading". It is not a motion. Therefore, Mr. Courser was able to amend his complaint as to Vincent Krell at any time, and remove his as a defendant because Vincent Krell never filed a "responsive pleading".

**F.     These issues are also moot because the District Court failed to ask Mr. Courser whether he wanted to withdraw his notice of voluntary dismissal.**

The District Court converted Mr. Courser's notice of voluntary dismissal into a motion to dismiss under Rule 41. The District Court then imposed a condition on the dismissal as to Krell. That condition was "with prejudice". When a court imposes such a condition, the court is required to inform Mr. Courser "of the specific conditions that would be placed on [his] dismissal and given [him] the opportunity to withdraw the motion if [he] found those conditions too onerous. *Duffy v Ford Motor Company*, 218 F.3d 623, 631 (6th Cir. 2000) (citing *Marlow v Winstron & Strawn*, 19 F.3d 300, 305 (7th Cir. 1994) ("A court should not label something as a term and condition yet not afford the affected party an opportunity to consider its options before making his decision."). See also *Michigan Surgery Investment, LLC v. Arman*, 627 F.3d 572, 575 (6th Cir. 2010) (before converting motion or voluntary dismissal without prejudice into dismissal with prejudice, under Federal Rules of Civil Procedure, court must [1] give notice of intention to do so, [2] give plaintiff opportunity to be heard in opposition and [3] must give plaintiff opportunity to withdraw request for voluntary dismissal and proceed with litigation).

16

In *Michigan Surgery*, this The Sixth Circuit ruled that "[t]he district court improperly converted Michigan Surgery's motion for voluntary dismissal without prejudice into a dismissal with prejudice because the court did not give Michigan Surgery notice of its intention to dismiss with prejudice." *Id.*, at 574 (citing *United States v. One Tract of Real Property*, 95 F.3d 422, 425-26 (6th Cir. 1996). The *Michigan Surgery* court then described a three-factor test to consider in determining whether a court has abused its discretion when it dismissed a complaint with prejudice in response to a plaintiff's request for dismissal without prejudice:

> First, the district court must give the plaintiff notice of its intention to dismiss with prejudice. Second, the plaintiff is entitled to an opportunity to be heard in opposition to dismissal with prejudice. Third, the plaintiff must be given an opportunity to withdraw the request for voluntary dismissal and proceed with the litigation. This third requirement is essential because, unlike a dismissal without prejudice, a dismissal with prejudice operates as a rejection of the plaintiff's claims on the merits and res judicata precludes further litigation.

*Id.*, 575 (citing *One Tract*, 95 F.3d 425-26). The court in *Michigan Surgery* further stated:

> "In *One Tract*, the district court had dismissed with prejudice a civil forfeiture action brought by the United States after the government had moved for voluntary dismissal without prejudice under Rule 41(a)(2). On appeal, we doubted the government's assertion that it did not have notice of the court's intention to dismiss with prejudice, because the government knew that the opposing party had asked for dismissal with prejudice and the opposing party had argued for dismissal with prejudice at the hearing on the government's motion. However, it was unnecessary to decide whether the first two requirements were satisfied, because the third requirement — that the plaintiff be given an opportunity to withdraw the motion and proceed with the litigation — had not been met. *Id.* at 426.

> The physicians argue that the notice requirement was satisfied here because Michigan Surgery was well aware that the district court was considering dismissal with prejudice, since the physicians' response to the plaintiffs' Rule 41(a)(2) motion specifically requested that if the court granted the motion, that it dismiss with prejudice. Although we reversed in *One Tract* based on the lower court's failure to meet the third requirement, rather than the notice requirement, the "notice" and "opportunity to withdraw" requirements logically work together. The government in *One Tract* did not have a meaningful opportunity to withdraw its

17

request for voluntary dismissal *because* it had no notice of the court's intention to dismiss with prejudice.

Stated differently, at least where dismissal with prejudice is the condition, an opportunity to withdraw a request for voluntary dismissal is meaningful only after the plaintiff has been given notice of the terms on which the district court intends to condition a voluntary dismissal.

*One Tract's* requirement of "notice of the court's intention to dismiss with prejudice" thus means that the district court must inform the plaintiff that the court intends to grant a Rule 41(a)(2) motion with prejudice. *See id.* at 425. It is not enough that the plaintiff is aware that dismissal with prejudice is possible under Rule 41(a)(2), or even that the defendant has requested that any grant of a Rule 41(a)(2) motion be with prejudice. The language of Rule 41(a)(2), providing that the district court may grant a voluntary dismissal "on terms that the court considers proper," Fed.R.Civ.P. 41(a)(2), permits the court to "condition" the grant of a Rule 41(a)(2) motion on dismissal with prejudice. *See One Tract*, 95 F.3d at 425. Because dismissal with prejudice is a "term" or "condition" of voluntary dismissal, it must be presented to the plaintiff as such. Otherwise, the plaintiff has to gamble on what the court will do. Forcing plaintiffs to forecast the terms on which a district court intends to condition a voluntary dismissal would discourage plaintiffs from filing Rule 41(a)(2) motions in the first place. Because a dismissal with prejudice precludes further litigation, a plaintiff "need not . . . accept the risk that his claim, not yet adjudicated, will be effectively rejected on its merits." *Gravatt v. Columbia Univ.*, 845 F.2d 54, 56 (2d Cir. 1988).

This conclusion is supported by decisions from other circuits that have considered the issue. *See Marlow v. Winston Strawn*, 19 F.3d 300, 304 (7th Cir. 1994); *Andes v. Versant Corp.*, 788 F.2d 1033, 1037 (4th Cir. 1986); *GAF Corp. v. Transamerica Ins. Co.*, 665 F.2d 364, 368 (D.C. Cir. 1981). Thus, the plaintiffs were entitled to notice of the court's intention to dismiss with prejudice. Because the district court did not inform Michigan Surgery that it planned to grant the Rule 41(a)(2) motion with prejudice, the court's dismissal with prejudice was not proper.

Likewise, the district court did not provide Michigan Surgery with an opportunity to withdraw the request for voluntary dismissal and proceed with the litigation. *See One Tract*, 95 F.3d at 425-26."

*Id.*, 575-576. The same holds true in this case. It is not enough that defendant Krell requested

dismissal with prejudice in his improper response to the notice of voluntary dismissal. Rather,

Mr. Courser was entitled to notice of the District Court's intention to dismiss with prejudice.

Because the District Court did not inform Courser that it planned to dismiss with prejudice

18

pursuant to Rule 41(a)(2), the court's dismissal with prejudice was not proper. Just as occurred in *Michigan Surgery*, the District Dourt erred when it converted the notice of voluntary dismissal to a motion to dismiss.

## G.      What Next?

Having asked for these briefs, the question is "what next?" Mr. Courser requests oral argument. First, if he is not permitted to drop parties pursuant to Rule 15(a) then the first amended complaint and notice of voluntary dismissal would be ineffective. In that case, no parties would be dismissed. If he is permitted to drop a party pursuant to Rule 15(a), then Mr. Courser would clearly have the opportunity to advise the Court that he does not want to dismiss Vincent Krell with prejudice. The case would then be reinstated as to Vincent Krell and as to other parties as well who cannot be dropped through the amended complaint or the notice of voluntary dismissal process.

Respectfully submitted

DePERNO LAW OFFICE, PLLC

Dated: January 19, 2018

*/s/ Matthew S. DePerno*
Matthew S. DePerno (P52622)
Attorney for Plaintiff Todd Courser
951 W. Milham Avenue, PO Box 1595
Portage, MI 49081
matthew@depernolaw.com
(269) 321-5064

19